THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. LARRY BERRY, Defendant-Appellant.

Second District   No. 2—89—0148

Opinion filed May 25, 1990.

E. Duke McNeil, of E. Duke McNeil & Associates, of Chicago, for appellant.

Gary V. Johnson, State's Attorney, of Geneva (William L. Browers, of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

PRESIDING JUSTICE UNVERZAGT delivered the opinion of the court:

The defendant, Larry Berry, was found guilty by a jury in the circuit court of Kane County of unlawful possession of a controlled substance with intent to deliver (cocaine), unlawful possession of a controlled substance (cocaine), and unlawful possession of cannabis. (Ill. Rev. Stat. 1987, ch. 56½, pars. 1401(b)(2), 1402(b), 704(b).) The court merged the three convictions and sentenced the defendant for the intent to deliver conviction to six months' imprisonment in the Kane County jail and 48 months' probation, the first 12 months to be served as intensive probation.

Defendant appeals, contending he was not proved guilty beyond a reasonable doubt where the amount of cocaine found on his person, which was stipulated to be 3.9 grams, was so small as to negate any intent to deliver. We affirm.

On December 9, 1987, between the hours of 9 and 11 p.m., Elgin police officers executed search warrants issued for the persons of the defendant, James Gatlin and two cars, a blue Datsun and a silver-blue

Cadillac. The defendant and Gatlin were observed sitting in a maroon-colored car parked behind the blue Datsun in the area of Ann and Gifford streets in Elgin, an area where drug trafficking was known to the police to occur. The Cadillac was not in the area.

The defendant, who had been seated in the driver's seat of the maroon car, was searched. In his left coat pocket, police discovered two sealed envelopes, each containing $1,000 in various denominations of United States currency. In his left rear pocket, police found a plastic bag containing a green leafy substance, stipulated to be marijuana, and $135 in United States currency. In his right rear pocket, police found $1,016 in United States currency. A hand-rolled cigarette was also recovered from the car.

The defendant was arrested and was strip searched at the Elgin police department. A small amount of marijuana in a plastic bag was recovered from the crotch area of his pants, and a plastic bag containing a white powdery substance was found in the crotch area of his underwear. It was stipulated that this white powdery substance was 3.9 grams of cocaine. No user paraphernalia was found on the defendant's person, and no contraband was recovered in the search of James Gatlin.

At trial, Officer T.J. Strickland and Detective Sergeant David Copher of the Elgin police department were qualified as experts in the area of narcotics. In Strickland's opinion, the defendant was selling narcotics and not using them at the time he was arrested. Strickland based his opinion on the fact that the defendant had in excess of $3,100 in different locations on his person, the amount of cocaine the defendant possessed, and the lack of user paraphernalia such as a small straw, mirror, razor blade, small pipe or tube. Strickland testified cocaine is usually packaged for sale in quantities of one and three grams, one-quarter ounce, one-half ounce and ounces; the cost is about $100 a gram. The packages are usually fastened, but Strickland had also seen it for sale just loose in an open bag such as the one recovered from the defendant.

Detective Sergeant Copher was also of the opinion that the defendant was selling drugs. His opinion was based on the fact that the defendant was carrying a large amount of currency, possessed a quantity of cocaine in excess of what the user in that area would have and did not have any user paraphernalia in his possession. Copher testified the usual cocaine user would have anywhere from one-quarter to one-half to a gram of cocaine on his person. Copher testified that when he approached the maroon car, he observed the defendant place a hand-rolled cigarette between the car seats and that Gatlin did not

make any kind of a move. An additional quantity of cannabis was seized from the blue Datsun. It was stipulated that all the cannabis seized on December 9 was in fact cannabis with a total weight between 2.5 and 10 grams.

The defendant testified that when the police arrived, Gatlin shoved the later-recovered package of cocaine down the defendant's pants. He further testified that he borrowed $2,000 from Gatlin and $1,000 from another friend, whom he did not identify, to assist his mother in getting her house out of foreclosure. She needed $4,500 or $4,600 to keep the house. He stated the police laughed when he told them the money was for his mother's mortgage. He did not sign an IOU for the loan from Gatlin because he grew up with Gatlin and Gatlin trusted the defendant to pay him back. The defendant stated his mother lost the house and moved back down south to Parkin, Arkansas, because the police wouldn't give him back the money and he did not meet the deadline.

The defendant, who in 1987 was employed as a patrolman in Parkin, Arkansas, admitted having the marijuana which was found in his back pocket for his personal use, but he denied having cannabis in the crotch area of his pants at the police station or seeing the cannabis recovered from the other car or having ever sold cocaine or other drugs. He testified he did not tell anyone until trial that James Gatlin shoved the cocaine down his pants because he knew of Gatlin's violent character, was afraid of Gatlin, and Gatlin got out on bond before he did. He did not know Gatlin's whereabouts at the time of trial. When Gatlin stuck the cocaine down his pants, the defendant did not move because the police might have thought he was going for a gun and shot him. As noted, the jury found the defendant guilty on all charges.

Defendant concedes he was found in actual possession of the drugs but argues there was insufficient circumstantial evidence to create an inference of intent to deliver. Defendant acknowledges that, in determining whether there was an intent to deliver, the threshold question is whether the amount of contraband is in excess of any amount that could be viewed as being for personal use. He further acknowledges that factors other than the amount of contraband possessed may support the inference that there was an intent to deliver. He argues, however, that the jury could not reasonably have inferred an intent to deliver from his possession of 3.9 grams of cocaine where a larger amount, 4.55 grams, was specifically described as "small" in *People v. Kline* (1976), 41 Ill. App. 3d 261, 264. Further, he discredits Officer Strickland's opinion that he had the intent to deliver because

it was based on a nonspecific amount of cocaine (*i.e.*, "[B]ased on the amount of cocaine you [Officer Strickland] observed"), and Detective Sergeant Copher's opinion was based on 5.5 grams, which was the weight of the cocaine as measured by the police department scale, rather than the stipulated amount, 3.9 grams. He argues there was nothing to tie him to the area where he was arrested and that the possession of 5.5 grams of cocaine might have been typical of users in other areas. Assuming, *arguendo*, that Detective Sergeant Copher's estimate of how much the typical cocaine user would have on his person was correct (between one-quarter and one gram) defendant points out he was not found to be in possession of any packaging materials and, thus, no inference of an intent to deliver arises. Moreover, he asserts, the absence of drug paraphernalia in his possession should weaken, not strengthen, the intent to deliver inference against him. Finally, he submits the amount of money found in his possession "is irrelevant"; its possession was explained, and there was no evidence that drug sales were taking place from the auto immediately prior to the arrests as in *People v. Hunter* (1984), 124 Ill. App. 3d 516.

■ We agree with the State that the evidence supports the conclusion that the defendant was guilty beyond a reasonable doubt of the possession of cocaine with the intent to deliver. When the sufficiency of the evidence is challenged on appeal, the reasonable doubt test set forth in *People v. Collins* (1985), 106 Ill. 2d 237, is to be applied in all criminal cases whether the evidence is direct or circumstantial. (*People v. Pintos* (1989), 133 Ill. 2d 286, 291.) That reasonable doubt test is:

> " '[W]hether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.' " (Emphasis in original.) *Collins*, 106 Ill. 2d at 261, quoting *Jackson v. Virginia* (1979), 443 U.S. 307, 319, 61 L. Ed. 2d 560, 573, 99 S. Ct. 2781, 2789.

■ ■ Intent to deliver is necessarily proved by circumstantial evidence. (*People v. Friend* (1988), 177 Ill. App. 3d 1002, 1021.) As the defendant concedes, a reasonable inference of intent to deliver narcotics arises where the amount of controlled substance possessed could not be viewed as designed for personal consumption. (*People v. Chrisos* (1986), 151 Ill. App. 3d 142, 147; *People v. Schaefer* (1985), 133 Ill. App. 3d 697, 702.) The inference to be drawn from the amount of a controlled substance possessed must be judged on a case-to-case basis. (*People v. Kline* (1976), 41 Ill. App. 3d 261, 266.) The inference of intent to deliver may be enhanced by the combination of drugs and the

manner in which they are kept (*Friend*, 177 Ill. App. 3d at 1021; *People v. Knight* (1985), 133 Ill. App. 3d 248, 254); by the presence of drug paraphernalia (*Friend*, 177 Ill. App. 3d at 1021 (a scale); *Kline*, 41 Ill. App. 3d at 264 (reefer rollers, scales, pipes, pans and tweezers)); and by large amounts of cash and weapons (*People v. Atencia* (1983), 113 Ill. App. 3d 247 (loaded gun and $26,900 in cash)).

■■ ■ We find unpersuasive the defendant's attempt to negate the inference of intent to deliver which was drawn by the jury by comparing the 3.9 grams of controlled substance he possessed with the amounts of contraband possessed in *People v. Birge* (1985), 137 Ill. App. 3d 781 (51 pounds of cannabis); *People v. Schaefer* (1985), 133 Ill. App. 3d 697 (21.9 grams of cocaine and 578.8 grams of cannabis); *People v. Knight* (1985), 133 Ill. App. 3d 248 (364 grams of cannabis and 638 grams of PCP); *People v. Munoz* (1982), 103 Ill. App. 3d 1080 (250 grams of cocaine), and *People v. Kline* (1976), 41 Ill. App. 3d 261 (6,443.33 grams of marijuana, 4.55 grams of cocaine, 13.74 grams of LSD). Those amounts certainly are larger by comparison, but each case is to be decided on its own facts (*Kline*, 41 Ill. App. 3d at 266), and the statute under which the defendant was charged clearly prohibits possession of even lesser amounts with the intent to deliver, *i.e.*, "more than 1 gram but not more than 15 grams of any substance containing cocaine" (Ill. Rev. Stat. 1987, ch. 56½, par. 1401(b)(2)).

The defendant in *People v. LeCour* (1988), 172 Ill. App. 3d 878, appealing his conviction for one count of unlawful possession with intent to deliver less than 10 grams of a substance containing cocaine, advanced virtually the same argument the defendant does here, focusing on the "small" amount of cocaine he possessed, 3.3 grams. Interestingly, the cocaine found on the defendant in *LeCour* was also recovered from the crotch of the defendant's underwear. No amount of large currency, weapons or drug paraphernalia was recovered from the defendant. We found in *LeCour*, however, that such factors do not comprise the exclusive indicia of intent and that intent to deliver may be inferred from any number of various circumstances. (*LeCour*, 172 Ill. App. 3d at 886.) We upheld the defendant's conviction there in light of the direct testimony of the defendant's intended purchaser, who testified he purchased one gram of cocaine from the defendant the day before the defendant's arrest by contacting him on the defendant's telephone pager. The purchaser, in cooperation with the police, contacted the defendant again the next day and requested 3.3 grams, the amount found on the defendant's person after his arrest at the agreed-upon delivery location.

The "small" amount of cocaine in *Kline*, cited in support by the defendant, was small in relation to the 6,443.33 grams of marijuana and 13.74 grams of LSD also possessed by the defendant. Here, Detective Sergeant Copher, testifying as an expert in the field of narcotics, stated the usual cocaine user in that area—which the jury reasonably could have construed to mean the Elgin area—would be in possession of between one-quarter to one-half to a gram of cocaine. At the least, defendant's possession of 3.9 grams of cocaine represented an amount almost four times more than reasonably could be viewed as being for his own personal consumption. The combination of the circumstances of the lack of "user" drug paraphernalia, the three separate, large amounts of United States currency, and the defendant's apparently not-so-unique underwear cache for the cocaine could reasonably have led the jury to conclude the defendant intended to deliver the cocaine, not use it. As suggested in *LeCour*, the lack of any drug paraphernalia is not an exclusive indicium of the intent to deliver. In *LeCour*, for instance, the amount of drugs to be delivered was prearranged, and no seller or user paraphernalia was found in the defendant's possession.

We note the defendant here denied the ownership of the cannabis package recovered from the crotch area of his pants but did not deny ownership of the cannabis found in his pocket. The jury reasonably could have believed that if Gatlin did shove anything down the defendant's pants, it may have been the cannabis and not the cocaine found in the crotch of the defendant's underwear, particularly since no contraband was recovered in the search of Gatlin's person.

■ When a defendant elects to testify in his own behalf, it is incumbent upon him to tell a reasonable story or be judged by its improbabilities. (*People v. Gross* (1988), 166 Ill. App. 3d 413.) We believe any rational trier of fact could have found it improbable that the defendant did not mention until trial that Gatlin shoved the package of cocaine down into the defendant's underwear because he was afraid of Gatlin in light of the defendant's other testimony that he grew up with Gatlin and that Gatlin loaned him $2,000 without so much as an IOU because Gatlin trusted the defendant to pay him back. The money found on the defendant may indeed have been earmarked for payment of the defendant's mother's mortgage. However, the jury reasonably could have found the money was drug-delivery related due to the improbability that Gatlin's loan of $2,000 would have been divided into two separate, sealed envelopes of $1,000 each and that the defendant never endeavored to identify the "friend" who loaned him the other $1,000.

In sum, viewing the evidence in the light most favorable to the prosecution, we conclude any rational trier of fact could have found the defendant guilty beyond a reasonable doubt of the unlawful possession of a controlled substance with the intent to deliver.

For these reasons, the judgment of the circuit court of Kane County is affirmed.

Affirmed.

WOODWARD and GEIGER, JJ., concur.