THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. SILVESTRE VALDEZ, Defendant-Appellant.

First District (5th Division)   No. 1—90—0753

Opinion filed June 19, 1992.—Rehearing denied July 15, 1992.

Daniel E. Radakovich and Hall & Kurz, both of Chicago (Kathryn Hall and Jerry B. Kurz, of counsel), for appellant.

Jack O'Malley, State's Attorney, of Chicago (Renee Goldfarb, Michael Latz, and Joseph P. Roddy, Assistant State's Attorneys, of counsel), for the People.

PRESIDING JUSTICE McNULTY delivered the opinion of the court:

Following a jury trial, defendant Silvestre Valdez was convicted of three counts of possession of a controlled substance with intent to deliver and sentenced to concurrent terms of 25 years in the Illinois Department of Corrections. The issues on appeal are: (1) whether defendant was proven guilty beyond a reasonable doubt; (2) whether defendant was proven guilty beyond a reasonable doubt of possession with intent to deliver more than 900 grams of cocaine; (3) whether

defendant was prejudiced by a police officer's testimony of a confession by defendant that was not disclosed until the day of trial; (4) whether the trial court erred in refusing to instruct the jury on the lesser included offense of possession; and (5) whether defendant was improperly convicted of two counts of possession with intent to deliver where he simultaneously possessed these controlled substances.

The relevant facts are as follows. Officers Evans, Williams and Ramirez and Sergeants West and D'Antonio, Commander Risley and Lieutenant Kiley all testified to essentially the same version of events. According to their testimony, the Chicago police department began a surveillance of defendant in November 1988, in connection with his participation in the narcotics trafficking organization known as the Durango Pipeline. On December 2, 1988, the officers observed defendant go to a garage located at 24th Street and use a key to enter the garage. From there he proceeded to the Kensington area of Chicago. He then drove to a house at 3126 South Avers, where he entered through the front door. Defendant completed this same circuit on December 22, 1988, January 3, 1989, and January 6, 1989. According to the officers, defendant's car was seen at the Avers address and the garage on 24th Street at least 20 times.

The police obtained a search warrant for defendant and the house on Avers and executed the warrant on January 11, 1989. The officers testified that when they arrived at the Avers house, they saw defendant put a key into the back door of the Avers house. As defendant started to open the door, the officers apprehended him. Officer Williams testified that he took defendant's keys and defendant pointed out the key that opened the back door. After entering the house, Officer Williams entered the rear bedroom off the kitchen. In the middle of the room, he saw an open ironing board and on it, a fully loaded .357 magnum revolver and shoulder holster, some marijuana and a small black pouch containing five plastic bags of white powder. In a closet, he discovered an open cardboard box containing $72,800 in cash, at least 12 sets of keys and a large plastic bag of white powder. Officer Williams also discovered a tray of gold jewelry, including a bracelet with the name "Manuel" written on it.

Officer Evans entered the kitchen and saw a gun, a black shoulder holster, small packets of white powder and three manila envelopes containing marijuana. In the basement ceiling, the officers found two bundles of money. They found two beepers on defendant's belt, and they also recovered two cellular phones, one which was ringing constantly.

The police supervisors then arrived and defendant told Sergeant West that the contraband found in the Avers house was "our stuff." When Sergeant West mentioned the garage at 24th Street, defendant said that he rented the garage with a friend. Defendant told another officer that he rented the garage with Manuel Rivera. The officers testified that during the search when they asked defendant if there were drugs in the garage, defendant responded "yes, we have got some dope there." Defendant then signed a consent form relative to the garage and also stated "there might be a load car sitting at Cermak and Harlem in the gas station in the driveway." The officers observed no bruises or marks on defendant's body and never heard defendant complain of any police abuse. They testified that there was no physical contact between the police and defendant, and defendant was not forced to sign the consent form.

When the officers opened the door to the garage, they found a 1980 brown Cadillac with taped packages on the back seat. One of the packages was partially open, revealing approximately $120,000. In addition to the money, brown heroin was found on the front passenger seat and 53 packages containing a white powder were discovered in the trunk. The Cadillac had no battery.

Sergeant Joseph D'Antonio, an expert in the field of narcotics, testified to the street value of narcotics. He noted that the average price for a gram of cocaine with a 57% level of purity is $142.10. The kilogram found at the Avers house was 100% pure and valued at approximately $250,000. The value of all the cocaine seized in defendant's case exceeded several million dollars. He noted that 70% of all cocaine in the United States comes from the Durango pipeline.

The parties stipulated that if the police chemist were to testify, she would testify that she weighed 53 bags containing a white powder which had a total weight of 50,350 grams. Sampling two of the bags, the chemist would have given her opinion that the white powder was cocaine with a purity level of 98.9%. Additionally, the chemist would have testified that the brown powdery substance found in the Cadillac was 25.10 grams of heroin. Lastly, the chemist would have testified that the white powder found in the bedroom of the Avers house was 953 grams of cocaine with a 100% purity level.

The first defense witness was Jaime Rivera, who testified that he met defendant in Durango, Mexico. Rivera testified that defendant did not live in the Avers house, but Rivera did visit with defendant in that house. According to recorded deed, Rivera had been the owner of Avers house since April 5, 1988, when he purchased the house with $30,000 in cash that he received from his brother Manuel. He did not

know where Manuel got the money. Jaime did not live in the house. He identified the gold bracelet with the name "Manuel" on it as belonging to his brother. He stated that his brothers Eloy and Manuel lived in the Avers house, but that in January 1989, Beto Cordoba rented the Avers house and paid the utility bills.

Defendant testified that he never lived at 3126 South Avers. During November 1988 to January 1989, Manuel and Eloy Rivera lived at the Avers house. Defendant testified that he never owned or saw a beeper or cellular phone during the period from November 1988 to January 1989.

According to defendant, the police initially confronted him after he made a phone call at 31st and Pulaski Avenue on January 11, 1989. Sergeant West and Officer Williams approached him, with their guns drawn, and asked him about the Rivera family and about a gun. Sergeant West handcuffed defendant and put him in the back of the squad car. As they neared the Avers house, defendant heard the officers radio "Okay, everything's set." While driving to the Avers house, Sergeant West continued to question him, pointed a gun at his head and hit, kicked and choked him. Defendant claimed that the officers threatened and hit him for two hours. Defendant stated that the officers forced him to sign the consent form, telling him that if he did not sign, they would tear up his house, handcuff him to the steering wheel of his car and drive it off Lake Shore Drive into Lake Michigan. Defendant signed the consent form because West told him "You're just a f---ing kid. Just sign this piece of paper and we will let you go." Defendant testified that during the search of the Avers house, he repeatedly stated that he did not control the house and he did not own cocaine. He testified that when he was arrested, he did not have any keys to the Avers house. He testified that he had never been to the 24th Street garage until the officers took him there. He did not rent the garage or tell the police he did. He did not know there were narcotics inside the garage, and he never told the officers that the recovered drugs were his. Defendant testified that he had been at the Avers house about twice a week for the three months preceding his arrest. He had been there with Jaime or Manuel Rivera to clean up the the basement that had recently been remodeled. Defendant testified that he had never been in the Avers house alone or overnight. He lived with his family in the Kensington area of Chicago.

On cross-examination, defendant testified that the police had a set of duplicate keys to his car and that is why his car was at the Avers house when he and the police arrived there. He testified although he

was beaten by the police, he never mentioned this abuse to the police or anyone else.

Edger Tenorio testified that he owned the garage on 24th Street and in October or November 1988 he rented the garage to Manuel Villa. Tenorio testified that he had seen Villa only three times but he was able to identify a photograph of Manuel Rivera as the man who rented the garage. He testified that defendant was not the person to whom he rented the garage, and also that he had never seen defendant around the garage.

Defendant's first contention is that the State failed to prove him guilty beyond a reasonable doubt of possession of a controlled substance with intent to deliver. To prove possession of a controlled substance, the State must establish that the defendant knew of the presence of the substance and the substance was in defendant's immediate and exclusive control. (*People v. Marshall* (1987), 165 Ill. App. 3d 968, 521 N.E.2d 538.) Possession may be established by evidence of actual physical possession or constructive possession. (*People v. Scott* (1987), 152 Ill. App. 3d 868, 505 N.E.2d 42.) Constructive possession may be proved by showing that the defendant controlled the premises where the narcotics were found. (*People v. Morrison* (1988), 178 Ill. App. 3d 76, 532 N.E.2d 1077.) Questions of knowledge and possession are decisions for the trier of fact, and its findings will not be disturbed on review unless the evidence is so palpably contrary to the verdict or so unreasonable, improbable or unsatisfactory as to create a reasonable doubt of guilt. *People v. Gallagher* (1990), 193 Ill. App. 3d 566, 550 N.E.2d 255.

Our careful review of the record reveals sufficient evidence to permit the inference that the Avers residence was within defendant's control. According to the testimony of several police officers, defendant was the only person at the residence when the officers executed the warrant, and they apprehended defendant as he attempted to enter the Avers house with a key. Furthermore, several officers observed defendant, on approximately 20 occasions, enter the Avers house and stay there for considerable periods of time. In addition, several officers testified that defendant admitted to having control over the Avers house and owning the seized cocaine. See *People v. Chicos* (1990), 205 Ill. App. 3d 928, 563 N.E.2d 893; *People v. Griffin* (1990), 194 Ill. App. 3d 286, 550 N.E.2d 1244.

Likewise, the record clearly reveals sufficient evidence to link defendant to the garage and the Cadillac at 24th Street. Police testimony revealed that defendant had been at the garage on 24th Street several times. Defendant had keys in his possession that fit both the

garage and the Cadillac, and defendant admitted to the officers that he and a friend rented the 24th Street garage. Accordingly, the State proved beyond a reasonable doubt that defendant had control, not only over the Avers house, but also the 24th Street garage.

■■ Defendant next maintains that because the State tested only 2 of the 53 bags of white powder seized from the Cadillac, the State failed to prove beyond a reasonable doubt that defendant was guilty of possession with intent to deliver 50,350 grams of cocaine. The stipulation here provided that if the chemist were to testify, she would testify that the 53 bags of white powdery substance weighed 50,350 grams. She would also testify that she randomly selected two of the bags from this group of 53, and that these two bags contained cocaine weighing 1,987.9 grams. While the chemist gave her opinion as to the weight of all 53 bags, it is clear from the stipulation that she only gave her opinion as to the contents of 2 of the 53 bags. For this reason, we are not bound by the decisions in *People v. Williams* (1990), 200 Ill. App. 3d 503, 558 N.E.2d 261 (wherein the stipulations were unclear as to whether chemist tested each individual packet or only a sample), and *People v. Miller* (1991), 218 Ill. App. 3d 668, 578 N.E.2d 1065 (wherein it was unclear whether the chemist tested each packet of the seized substance separately or tested them only after commingling the packets). Because the stipulations were unclear in those cases, the court held the defendants were bound by the stipulations and declined to presume that improper testing procedures were used. In the instant case, because it is clear from the stipulation that the chemist tested only two of the 53 bags for the presence of cocaine, we will examine the propriety of the State's testing procedures.

Where there is a lesser included offense for possessing a smaller amount of a controlled substance, the weight of the substance containing a drug is an essential element of a possession charge and the weight of the substance containing the drug must therefore be proved beyond a reasonable doubt. (*People v. Hill* (1988), 169 Ill. App. 3d 901, 524 N.E.2d 604.) While the general rule in Illinois is that a chemist need only test a random sample in order to be qualified to render an opinion as to the makeup of the entire substance before him, this rule is not without limitation. (*People v. Kaludis* (1986), 146 Ill. App. 3d 888, 497 N.E.2d 360.) Where separate bags or containers of suspected drugs have been seized, a sample of each bag or container must be conclusively tested in order to prove that it contains a controlled substance. (*People v. Young* (1991), 220 Ill. App. 3d 488, 581 N.E.2d 241 (tests performed on 1 of 58 paper packets merely indicated that 1.86 grams tested positive for cocaine); *People v. Hill*

(1988), 169 Ill. App. 3d 901, 524 N.E.2d 604 (chemist only conclusively tested 3 of 63 bags of white powder and therefore proved defendant guilty beyond a reasonable doubt of possessing only the 21.93 grams of powder contained in the three bags.)

It is, therefore, clear that in order to conclude that all 53 bags contained cocaine, the proper procedure would have been for the State to test each of the 53 bags of white powder. However, according to the record here, the chemist tested an amount of cocaine which well exceeded the Class X level of 15 grams. The chemist tested 2 of the 53 bags recovered from the Cadillac and found these bags to contain 1,987.9 grams of 98.9% pure cocaine. In addition, the chemist tested the bag containing white powder that was found in the bedroom at the Avers house and determined the bag contained 953 grams of 100% pure cocaine. Therefore, even if the other 48,362.1 grams of white powder were not cocaine, the State still proved defendant guilty beyond a reasonable doubt of two counts of possession with intent to deliver a Class X quantity of cocaine.

Defendant claims that because the jury was led to believe that all 53 bags contained cocaine, it was prejudiced against defendant. While it was improper for the State to comment that all 53 bags contained cocaine, defendant never objected to these comments and we do not believe that the jury's verdict would have been any different had these errors not been made.

█ Nor do we find that defendant received an excessive sentence based on the court's belief that all 53 bags of white powder contained cocaine. In *People v. Connal* (1990), 199 Ill. App. 3d 661, 557 N.E.2d 430, the defendant appealed his sentence on the ground that the trial court improperly considered, as a factor in aggravation, the total weight of all four packages seized, when only one package had been chemically tested and proven to contain cannabis. The court affirmed, finding that the amount tested, 7,491 grams, was an amount substantially greater than the 500-gram weight required for defendant's conviction of a Class 2 felony. Moreover, the court noted that the trial court properly considered the factors in aggravation and mitigation and defense counsel alerted the court to the fact that the large amount of narcotics was not a factor that the court could consider in aggravation. Furthermore, the trial court never stated that the sentence imposed was based on evidence of 29,964 grams of cannabis rather than 7,491 grams tested, and the sentence imposed was less than the statutory maximum for this Class 2 felony.

Here, the trial court noted that defendant had control of a substantial amount of drugs and that "the facts of the case obviously

loom high in determining what the proper sentence should be." The trial court could have reached this same conclusion even if it considered only the 1,987.9 grams of cocaine contained in the two tested bags recovered from the trunk of the car, in addition to 953 grams of cocaine recovered from the house and 25.10 grams of heroin discovered in the front seat of the car. Nonetheless, it was not error for the trial court to take into consideration all 53 bags seized from the Cadillac. It is well settled in Illinois that the trial court, in determining a sentence, is not limited to information which would be admissible under the adversary circumstances of a trial. (*People v. Williams* (1992), 149 Ill. 2d 467.) In a sentencing hearing, a court is not bound by the usual rules of evidence, but may search anywhere within reasonable bounds for facts which tend to aggravate or mitigate the offense. (*People v. Thomas* (1981), 96 Ill. App. 3d 443, 421 N.E.2d 357.) Thus, in determining defendant's guilt, it was not proper to conclude that the 51 untested bags contained cocaine, but in defendant's sentencing hearing, the court may consider the likelihood that these bags contained cocaine as a factor in aggravation. We also find significant that in sentencing defendant, the trial court mentioned other factors in aggravation and mitigation, and while it could have sentenced defendant to a minimum sentence of 15 years and the maximum sentence of 60 years, defendant's sentence of 25 years was at the lower end of the statutory range, and thus not excessive.

Defendant next advances the argument that he was prejudiced by surprise testimony from police officers, particularly Lieutenant Kelly's testimony that recounted defendant's admissions. Lieutenant Kelly testified at trial that defendant admitted he had rented the 24th Street garage and that a Cadillac containing drugs was inside the garage. In light of the fact that defense counsel had not been made aware of these confessions at the suppression hearing or at any time before trial, the trial court properly ruled that the State committed a discovery violation and struck Lieutenant Kelly's testimony. (See Illinois Supreme Court Rule 412 (134 Ill. 2d R. 412(ii)) (the State shall disclose to defense counsel "any written or recorded statements and the substance of oral statements made by the accused *** and a list of witnesses to the making and acknowledgement of such statements").) Even if the State only learned of the officers' statements the morning of trial, this does not excuse its failure to disclose this information. *People v. Miles* (1980), 82 Ill. App. 3d 922, 403 N.E.2d 587.

We recognize that in some cases, where credibility of the witnesses is the paramount issue, the potential impact of a previously un-

disclosed confession on the jury is incalculable and even a trial court's admonition to the jury to disregard the surprise testimony may not suffice to overcome potential prejudice to the defendant. (*People v. Robinson* (1989), 189 Ill. App. 3d 323, 545 N.E.2d 268.) However, it is our opinion that in the instant case, the trial court's admonishment to the jury to disregard Lieutenant Kelly's testimony was sufficient to overcome the potential prejudice to defendant. Because Lieutenant Kelly's testimony was merely cumulative of that of other officers and the jury was not only immediately instructed to disregard Kelly's stricken testimony, but at the close of trial it was also instructed to disregard any testimony which the court had stricken, no prejudice resulted.

Defendant next maintains that the trial court erred in refusing to give the jury an instruction on the lesser included offense of possession of a controlled substance. It is well established that where there is evidence in the record which, if believed by the jury, would reduce the crime to a lesser included offense, an instruction defining the lesser offense should be given. (*People v. Bembroy* (1972), 4 Ill. App. 3d 522, 281 N.E.2d 389.) This rule is applicable even where a defendant's theory of defense is inconsistent with the possibility that he is guilty of the lesser included offense. (*Bembroy*, 4 Ill. App. 3d at 525.) It is equally well established that a trial court's refusal to give an instruction regarding the lesser included offense of possession of a controlled substance is not error where the evidence only supports delivery or intent to deliver, and the jury would only be justified in returning a verdict of guilty or not guilty on the greater offense. *People v. Zipprich* (1986), 141 Ill. App. 3d 123, 490 N.E.2d 8.

Here, although defendant denied possession altogether, we do not find that fact dispositive, but instead consider whether there is evidence in the record upon which the jury could have conceivably based a verdict of possession. While the officers observed defendant engaging in suspicious behavior by driving a certain circuit, the officer never saw him actually selling the narcotics. However, the evidence seized from the Avers house and the 24th Street garage does lead to a reasonable inference of intent to deliver narcotics. The inference of intent to deliver arises particularly from defendant's possession of a quantity of contraband in excess of any amount that could be viewed as meant for personal use (*People v. Schaefer* (1985), 133 Ill. App. 3d 697, 479 N.E.2d 428), as well as the weapons and large amount of cash recovered. (*People v. Tovar* (1988), 169 Ill. App. 3d 986, 523 N.E.2d 1178.) Defendant does not dispute that the items seized may in fact lead to a conclusion that defendant was guilty of

possession with intent to deliver, but instead contends that this determination should have been left to the jury.

In *People v. Crenshaw* (1990), 202 Ill. App. 3d 432, 559 N.E.2d 1051, the defendant argued that the trial court erred in refusing to instruct the jury on the offense of possession of a controlled substance because the evidence could also have supported a verdict on the lesser offense. An officer testified that a male passenger entered defendant's vehicle and that defendant discarded packets containing a white substance when he exited his vehicle. The contents of the white packet were determined to be 11.2 grams of cocaine which were divided into 22 smaller packets. In addition, a loaded revolver and an unidentified amount of money were retrieved. The court noted that the sale and/or delivery of the controlled substance had not been directly observed by police and the presence of the loaded weapon in the vehicle or the division of the cocaine into 22 smaller packets was not conclusive evidence of an intended delivery. Instead, the court found that the division of 11.2 grams of cocaine into 22 packets could have been the form in which the substance was purchased by defendant rather than the form in which it was to be sold. Accordingly, since the evidence would have supported a verdict for the lesser offense, it was improper for the trial court to refuse defendant's request for an instruction to the jury on the lesser offense of possession of a controlled substance.

In the instant case, because the delivery of the controlled substances was not directly observed by the officers, the trial court should have instructed the jury on the lesser included offense of possession. Nonetheless, based on the particular facts and circumstances of this case, we find this error harmless. While in *Crenshaw* the amount of drugs seized was not inconsistent with personal use, in the instant case, it is hardly reasonable to conclude the defendant would have 2,940.9 grams of cocaine and 25.10 grams of heroin, valued at well over $500,000, in his possession for personal use. Furthermore, defendant had possession of $192,800 in cash as well as weapons. Given the quantity and value of the seized drugs, plus the surrounding circumstances, we find it entirely unreasonable to believe the jury would have concluded that defendant had these quantities and values of illegal drugs in his possession for purposes other than the delivery. Therefore, while the trial court erred in refusing to instruct the jury on the lesser included offense of possession, this error was harmless beyond a reasonable doubt.

■ Defendant's final contention is that one of his convictions must be vacated because the simultaneous possession with intent to

deliver more than one controlled substance constitutes a single offense for which there can be only one conviction. Two of defendant's three convictions involve narcotics that have been recovered from the Cadillac parked at the 24th Street garage. One conviction involved the cocaine recovered from the trunk of the Cadillac. (Defendant was found guilty of violating section 401(a)(2) (Ill. Rev. Stat. 1987, ch. 56½, par. 1401(a)(2)).) The other conviction involved the heroin recovered from the front seat of the Cadillac. (Defendant was found guilty of violating section 401(a)(2) (Ill. Rev. Stat. 1987, ch. 56½, par. 1401(a)(1)).) One of these convictions must be vacated since the simultaneous possession of more than one controlled substance constitutes a single offense supporting only one conviction. (*People v. Manning* (1978), 71 Ill. 2d 132, 374 N.E.2d 200; see *People v. Banks* (1992), 227 Ill. App. 3d 950, 954 ("Enumeration of the different types of substances in the Act serves only to define what is to be considered a controlled substance. *** The amounts of the substances designated simply provide a means to classify the type of punishment for that possession. The State's argument, which seeks to have separate offenses under the Act defined by the substance possessed, is more properly directed to the General Assembly, not to the appellate court").) Accordingly, one of defendant's convictions for possession of a controlled substance seized from the car is vacated.

Affirmed in part; vacated in part.

LORENZ and MURRAY, JJ., concur.