THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. ANGELO PAVONE, Defendant-Appellant.

First District (5th Division)    No. 1—91—2061

Opinion filed January 29, 1993.

M. Jeffrey Bergschneider, of Kansas City, Missouri, for appellant.

Jack O'Malley, State's Attorney, of Chicago (Renee Goldfarb and James E. Fitzgerald, Assistant State's Attorneys, of counsel), for the People.

JUSTICE McNULTY delivered the opinion of the court:

Following a bench trial, defendant Angelo Pavone was found guilty of possession of a controlled substance with intent to deliver 14.03 grams of cocaine. Defendant was subsequently sentenced to 48 months' probation and two years of drug treatment, and was fined $5,000. Defendant contends on appeal that: (1) he was not proven guilty beyond a reasonable doubt of possession with intent to deliver; (2) the trial court erred when it ruled that defendant was not entitled to a *Franks* hearing; and (3) the defendant is entitled to a credit on his fine for the 87 days he was in custody prior to sentencing.

Detective Fachini stated in the complaint for search warrant that a confidential informant provided him with the information that on August 1, 1989, the informant purchased drugs from a white male known as Angelo, who manages Midwest Transmission. The informant described Angelo as approximately 35 years old, 5 feet 8 inches tall, 160 pounds with black hair and brown eyes. The search warrant was executed on August 1, 1989, for the premises at 3008 North California Avenue, known as Midwest Transmission. When the officers entered the transmission shop, they encountered defendant Angelo Pavone. Defendant informed them that he owned the shop.

The officers searched the premises and recovered a .357 revolver from defendant's desk. Because of the vast size of the premises and the number of boxes throughout the shop, the detectives called in a canine unit. Soon thereafter, the police dog started barking at a canvas bag which was hidden behind a desk. The bag contained white powder, another clear plastic bag which contained 10 smaller bags containing white powder, and 28 tin foil packets also containing white powder. In addition, the detectives testified that they found a bottle of lactose, a sifter and several squares of tin foil.

Defendant testified that his ordinary business hours are 10 a.m. to 6 p.m. However, on August 1, 1989, he did not open his shop until almost 2 p.m. because he had to go to a currency exchange to pay a phone bill so that his business telephone could be reconnected. Defendant testified that the first time he saw the canvas bag was when the detective carried it out of his shop and the first time he saw the cocaine, lactose and sifter was when the items were introduced in evidence during his trial. Defendant admitted that on August 1, 1989,

he had one gram of cocaine in a shoe located in the bathroom of the transmission shop, but it was never recovered by the detectives. Defendant claimed that the cocaine was for his own personal use. A stipulation was entered that defendant would testify that on August 1, 1989, he was wearing a beeper.

Defendant's first contention is that the State failed to prove him guilty beyond a reasonable doubt since there was a possibility that the lactose cutting agent found in the bag recovered from defendant's shop was added to the cocaine sometime after the bag's discovery. Defendant points out that the trial court was troubled by Officer Moore's testimony that when he opened the canvas bag, he saw the contraband, but not the large lactose bottle. In fact, the trial court stated:

> "I have serious doubt as to the quantity. I believe there is a very real position that this lactose may have been added to cocaine after its discovery. I find beyond a reasonable doubt that the defendant possessed a quantity of cocaine with the intent to deliver it. I have calculated the quantity and find that defendant is guilty of possessing 3.05 percent of 408.61 grams. That is the unquestioned amount of 14.03 grams of cocaine."

The trial court therefore found defendant guilty of possession of "any other amount" of cocaine with intent to deliver. (Ill. Rev. Stat. 1987, ch. 56½, par. 1401(c).) The trial court's conclusion was based on chemist Fulcher's testimony that the substance seized from defendant's office weighed 408.61 grams, the larger bulk of white powder containing 4.2% pure cocaine and the white powder found in the tin foil packets containing 3.5% pure cocaine.

■■ If an item cannot be readily identified or is susceptible to alteration by tampering or contamination, its chain of custody must render it improbable that the item has been contaminated, exchanged or subject to tampering. (*People v. Hominick* (1988), 177 Ill. App. 3d 18, 531 N.E.2d 1049.) In establishing the chain of custody, the State is not required to exclude all possibility of tampering; it is sufficient to demonstrate that the exhibit has not been changed in any important respect and that it took reasonable protective measures since the substance was seized. (*People v. Pettis* (1989), 184 Ill. App. 3d 743, 540 N.E.2d 1097.) Unless defendant provides actual evidence of tampering or substitution, the State need only establish a stated probability that tampering or substitution did not occur, and any deficiencies go to the weight and not the admissibility of evidence. *People v. Holman* (1987), 157 Ill. App. 3d 764, 510 N.E.2d 1139.

■ Although Officer Moore testified that he did not see the lactose when he opened the canvas bag, defendant has not provided us with actual proof of tampering or substitution. Instead, we are confronted with the evidence that the police dog made a positive identification indicating that drugs were contained in the canvas bag seized from defendant's office, and there is no evidence of a break in the chain of custody. Furthermore, the trial court noted that it found the State's witnesses more credible than defendant or defense witnesses. (See *People v. Leemon* (1977), 66 Ill. 2d 170, 361 N.E.2d 573 (whether the drugs received into evidence were the drugs seized from the defendant is a question of the credibility of the witnesses and best left to the trier of fact).) Accordingly, the trial court could rationally have found defendant guilty beyond a reasonable doubt of possessing 14.03 grams of cocaine with intent to deliver.

■ Defendant's next contention is that his conviction for possession of a controlled substance with intent to deliver should be reduced to possession because there was insufficient evidence of an intent to deliver. Intent to deliver is necessarily proved by circumstantial evidence. (*People v. Cruz* (1984), 129 Ill. App. 3d 278, 472 N.E.2d 175.) A reasonable inference of intent to deliver is drawn from whether the amount of contraband is in excess of any amount that could be viewed as used for personal use. (*People v. Berry* (1990), 198 Ill. App. 3d 24, 555 N.E.2d 434.) Factors that also support an inference that narcotics were possessed with intent to deliver include the possession of a combination of drugs, the discovery of a large amount of cash, the manner in which the drugs were kept, the presence of paraphernalia used in the sale of drugs, and the existence of weapons. *People v. Rouser* (1990), 199 Ill. App. 3d 1062, 557 N.E.2d 928.

■ In the case at bar, a canvas bag was seized from defendant's office which contained a clear plastic bag holding white powder, 10 smaller clear plastic bags each filled with white powder and 28 individual tin foil packets also filled with white powder. The police officers also testified that they found a sifter instrument and several pieces of tin foil cut into small squares. Defendant kept a .357 revolver in his desk drawer. Based on this evidence, a rational trier of fact could have found beyond a reasonable doubt that defendant intended to deliver cocaine.

■ Defendant next maintains that the trial court erred in denying his motion for a *Franks* hearing. In limited circumstances, a defendant may be entitled to an evidentiary hearing to challenge the veracity of statements made by the police to obtain a search warrant. (*Franks v. Delaware* (1978), 438 U.S. 154, 57 L. Ed. 2d 667, 98 S. Ct.

2674.) A defendant is entitled to an evidentiary hearing when he makes a substantial preliminary showing that a false statement knowingly and intelligently, or with reckless disregard for the truth, was included by the affiant in the warrant affidavit and the allegedly false statement is necessary to the finding of probable cause. (*Franks*, 438 U.S. at 155-56, 57 L. Ed. 2d at 672, 98 S. Ct. at 2676.) The court must make its determination of whether a substantial showing has been met by balancing the statements in the warrant affidavit against those in support of defendant's challenge to the warrant. (*People v. Lucente* (1987), 116 Ill. 2d 133, 506 N.E.2d 1269.) The trial court's decision is unavoidably subjective and will not be disturbed on review absent an abuse of discretion. *Lucente*, 116 Ill. 2d 133, 506 N.E.2d 1269.

■ Here, attached to defendant's *Franks* motion was an affidavit from defendant stating that he awoke at 1 p.m. on August 1, 1989, arrived at his place of business at approximately 1:30 p.m. and discovered that his telephone had been disconnected. He went to the New Diversey-California Currency Exchange to pay his phone bill and returned to work. An affidavit from defendant's wife corroborates the time defendant left the house. An affidavit from Albert Green, owner of the currency exchange, stated that defendant was at the currency exchange on the afternoon of August 1, 1989, and paid an overdue bill. Based on these affidavits, we do not find the trial court's decision denying defendant a *Franks* hearing to be an abuse of discretion. Two of the affidavits filed in this case were filed by interested parties. The third, filed by Green, merely stated that defendant was at the currency exchange on the afternoon of August 1, 1989. Green's affidavit did not state the time defendant went to the currency exchange or where plaintiff was the rest of the day. It did not establish that defendant could not have been at his shop at the time when the confidential informant claimed the drug deal took place. We therefore find that the trial court could have permissibly concluded that an evidentiary hearing was not warranted. See *People v. Tovar* (1988), 169 Ill. App. 3d 986, 523 N.E.2d 1178.

■ Lastly, defendant contends, and the State agrees, that defendant is entitled to credit of $5 per day for each day of preconviction incarceration. Section 110—14 of the Illinois Code of Criminal Procedure of 1963 provides:

"Any person incarcerated on a bailable offense who does not supply bail and against whom a fine is levied on conviction of such offense shall be allowed a credit of $5 for each day so incarcerated upon application of the defendant. The clerk of the

Court shall notify the defendant in writing of this provision of the Act at the time he is convicted. However, in no case shall the amount so allowed or credited exceed the amount of the fine." (Ill. Rev. Stat. 1987, ch. 38, par. 110—14.) Because defendant was incarcerated for 87 days, at $5-per-day credit rate, defendant is entitled to a credit of $435 against the $5,000 fine.

For the reasons set forth above, the conviction is affirmed and defendant is given a credit of $435 against the fine.

Affirmed as modified.

MURRAY and COUSINS, JJ., concur.