THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. BOBBY GREEN, Defendant-Appellant.

First District (5th Division)   No. 1—90—3521

Opinion filed December 3, 1993.—Rehearing denied December 22, 1993.

McNULTY, J., specially concurring.

Michael J. Pelletier and Donna Finch, both of State Appellate Defender's Office, of Chicago, for appellant.

Jack O'Malley, State's Attorney, of Chicago (Renee Goldfarb, William D. Carroll, and Andrew R. Dalkin, Assistant State's Attorneys, of counsel), for the People.

JUSTICE COUSINS delivered the opinion of the court:

Following a trial by jury, defendant, Bobby Green (Green), was convicted of two counts of possession of a controlled substance with intent to deliver (Ill. Rev. Stat. 1987, ch. 56$^{1}/_{2}$, pars. 1401(b)(2), (c)), and sentenced to 10 years of imprisonment. On appeal, Green argues: (1) that his conviction for possession of a controlled substance with the intent to deliver must be reduced to simple possession because there was insufficient evidence of an intent to deliver; (2) that he was denied the right to a fair trial when the State refused to disclose, and the trial court failed to compel, the name of an occurrence witness; (3) that the trial court erred when it failed to ensure that Green knowingly and intelligently waived an instruction on the lesser included offense of possession; and (4) that the trial court abused its discretion by sentencing Green to 10 years' imprisonment.

We affirm.

BACKGROUND

On February 28, 1989, at approximately 10:30 p.m., Officer Thomas Kwasinski (Kwasinski) and his partner, Tameron Martin (Martin) went to 1527 North Wicker Park to arrest a subject wanted on a warrant. The officers ascended to the second floor of the apartment building, found the subject, and arrested him.

Kwasinski testified that after the arrest, he and his partner had been leading the arrestee down the hallway when Kwasinski heard "snorting sounds" coming from another apartment on the floor. Kwasinski looked into the open apartment and saw Green sitting at the foot of the bed holding a mirror from which he was snorting a tan powder into his nose through a straw. At that point, Kwasinski entered the room, announced his office and placed Green under arrest.

Following the arrest, Kwasinski searched Green and found a black key case in his front pants pocket. Kwasinski stated that he opened the case and found 18 clear packets of a white substance and 26 tinfoil packets of a tan powder. From his experience as a police officer, he suspected that the white substance was cocaine and the tinfoil packets contained heroin. Kwasinski placed the tan powder from the mirror that Green had been holding into two tinfoil packets that he had made and put it with the other packets.

In addition to the suspect drugs, the officer confiscated $87 in cash, a mirror, a glass pipe, numerous screens, a lighter and a scale. Prior to trial, however, all the drug paraphernalia seized from Green's apartment was destroyed at Kwasinski's request. Kwasinski explained that having drug paraphernalia in one's possession is not,

in and of itself, a criminal offense and, therefore, it was police policy to destroy such items.

Kwasinski testified that in addition to Green, there were two other males present in Green's apartment at the time of the arrest, but he did not take the names of these men. He stated that no females entered the apartment during the time of the arrest.

Marsha Ross (Ross), a Chicago police criminalist in the controlled substances unit, testified that she performed several tests on the drugs recovered from Green. Ross randomly selected and tested four of the tinfoil packets containing tan powder; she concluded that the tan powder was heroin. The total weight of the heroin tested was 0.4 grams. Ross also randomly selected and tested eight of the plastic packets containing the white substance; she concluded that the white substance was cocaine. The total weight of the cocaine tested was 1.16 grams.

Audrey Thomas (Audrey) and her daughter, Jeanette Thomas (Jeanette), testified for the defense. Audrey stated that she and Green had been living together for 13 years, and in February of 1989, they had resided in the apartment building located at 1527 North Wicker Park. Both women testified that on February 28, they were having a small birthday party for Audrey's brother, David McCray, at the couple's apartment. Tim Washington, Jeanette's boyfriend, had also been present.

The two women testified that sometime during the evening, they left the apartment to go to the store for food and cigarettes. Audrey testified that as they were leaving, she saw the police in another apartment down the hall. The two women returned to the apartment a few minutes later to find the police and the tenant down the hall, a man known as "Mousey," inside the apartment.

Audrey testified that when she reentered her apartment, it was in shambles. She related that $250 was missing from a dresser drawer. She further testified that neither the black key case nor its contents belonged to Green.

In rebuttal, the State called Chicago police officer Martin. Martin testified that on February 28, 1989, he and his partner, Kwasinski, went to 1527 North Wicker Park at about 10:30 p.m. The officers had arrested a suspect and were leaving the building when Kwasinski directed Martin's attention to apartment 215. The officers entered the apartment and observed tan powder and drug paraphernalia. Specifically, Martin stated that he saw pipes, a mirror, scales and razor blades. At that point, Kwasinski searched Green, while Martin guarded the man that the officers had originally arrested. Martin testified that he saw his partner take a black key case from Green's

pants pocket. He testified that he never saw any women in Green's apartment on the evening of the arrest.

At the close of all the evidence, the jury found Green guilty of both counts of possession of a controlled substance with intent to deliver.

At the sentencing hearing, the State argued that Green should be sentenced to 12 years' imprisonment. The State pointed to Green's prior criminal record as justification for its recommendation. Specifically, the prosecutor noted Green's convictions for robbery in 1970 and armed robbery in 1979.

In mitigation, defense counsel argued that Green had been working for Bradford Systems Corporation on and off for the past 10 years. Further, the president of the company had informed the court that he would do his best to keep Green employed when he was released. In addition, defense counsel argued that Green had been convicted of a nonviolent crime which involved a minuscule amount of drugs.

The trial judge sentenced Green to 10 years' imprisonment. In sentencing Green, the judge stated that she considered the nature of the offense, his past criminal record and his TASC evaluation.

ANALYSIS

I

Initially, Green contends that his conviction for possession of a controlled substance with intent to deliver should be reduced to possession because there was insufficient evidence of an intent to deliver.

In assessing the sufficiency of the evidence supporting a conviction, "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." (Emphasis in original.) (*Jackson v. Virginia* (1979), 443 U.S. 307, 319, 61 L. Ed. 2d 560, 573, 99 S. Ct. 2781, 2789; see also *People v. Collins* (1985), 106 Ill. 2d 237, 261.) A reviewing court will not set aside a conviction unless the evidence is so improbable or unsatisfactory that it creates a reasonable doubt of the defendant's guilt. *Collins*, 106 Ill. 2d at 261.

The elements of the offense of possession of a controlled substance with intent to deliver are (1) that the defendant had knowledge of the presence of the controlled substance; (2) that the controlled substance was within the immediate control or possession of the defendant; and (3) that the defendant had the intent to deliver the controlled substance. (*People v. Bradford* (1993), 239 Ill. App. 3d 796,

799; *People v. Newman* (1991), 211 Ill. App. 3d 1087, 1093.) The only element which Green challenges as not having been proved beyond a reasonable doubt is the intent to deliver. Specifically, Green argues that the small amount of cocaine and heroin recovered (1.16 grams and 0.4 grams, respectively) was indicative of personal use rather than an intent to distribute. Furthermore, Green argues that no other evidence was presented from which a jury could have reasonably inferred an intent to deliver.

Intent to deliver is necessarily proved by circumstantial evidence. (*People v. Pavone* (1993), 241 Ill. App. 3d 1001, 1005; *People v. Cruz* (1984), 129 Ill. App. 3d 278.) A reasonable inference of intent to deliver arises from the defendant's possession of a quantity of a controlled substance in excess of an amount designed for personal use. (*Pavone*, 241 Ill. App. 3d at 1005; *People v. Berry* (1984), 198 Ill. App. 3d 24, 28.) However, the amount of contraband is not the sole evidentiary basis for inferring intent to deliver. (*Bradford*, 239 Ill. App. 3d at 799.) Factors which also support an inference that a controlled substance was possessed with intent to deliver include the possession of a combination of drugs, the manner in which the contraband was kept or packaged, and the presence of drug trafficking paraphernalia. See *Pavone*, 241 Ill. App. 3d at 1005; *Bradford*, 239 Ill. App. 3d at 799; *Berry*, 198 Ill. App. 3d at 28-29.

■ In the case at bar, the police recovered 18 clear packages of a white substance and 26 tinfoil packages of a tan substance from Green. Eight clear packages were randomly chosen and tested positive for cocaine. Four of the tinfoil packages were randomly chosen and tested positive for heroin. Kwasinski testified that based on his experience this type of packaging was commonly used in drug trafficking. Both Kwasinski and Martin testified that they observed a scale in Green's apartment. We conclude that when the evidence is viewed as a whole, it is sufficient to support a finding of intent to deliver beyond a reasonable doubt.

## II

Green next contends that he was denied a fair trial when the State refused to disclose, and the trial court failed to compel, the name of an occurrence witness.

Prior to trial, defense counsel informed the court that although he had requested that the State tender the names of occurrence witnesses who were present at the time of Green's arrest, the State had failed to do so. Counsel argued that these names were necessary to adequately investigate the case. In response, the prosecutors informed the judge that they had spoken with the police and the

names defense counsel sought were unavailable. The State maintained that it could not tender something it did not have, and the trial court agreed with the State.

Following jury selection, but prior to the introduction of evidence, defense counsel again informed the trial court that he had not received the names of the people present at the time of Green's arrest. Relying on the State's representation, the court told defense counsel that the names he sought were unavailable.

At trial, both officers testified that they did not take the names of the two men who were present when Green was arrested, and they did not know who these men were. On cross-examination, Kwasinski stated that he did not recall the name of the man arrested prior to Green, but he thought that information would be in the police files. On appeal, Green challenges only the failure to disclose the name of the man arrested just prior to Green's arrest.

Supreme Court Rule 412 (134 Ill. 2d R. 412) governs the disclosure of information to the accused. Rule 412 does not require that the names of occurrence witnesses be made known to a defendant; the defendant is only granted the right to "the names and last known addresses of persons whom the State intends to call as witnesses." (134 Ill. 2d R. 412(a)(i); *People v. Hamm* (1985), 136 Ill. App. 3d 11, 20; *People v. Longstreet* (1974), 23 Ill. App. 3d 874, 882-83.) However, the trial judge *may, in his discretion,* order discovery of occurrence witnesses *if the information is available.* 134 Ill. 2d R. 412(h); *Hamm,* 136 Ill. App. 3d at 20; *People v. Williams* (1974), 24 Ill. App. 3d 666, 670.

■ The trial court did not abuse its discretion in failing to compel the disclosure of the occurrence witness who was arrested just prior to Green. The arrest of this person was unrelated to the case at bar, and the State represented to the trial court that the information was unavailable. Furthermore, if defense counsel wanted the Chicago police department to attempt to locate the name of the arrested man, he could have subpoenaed the officers.

### III

Next, Green asserts that the trial court erred when it failed to ensure that he knowingly and intelligently waived an instruction on the lesser included offense of possession.

■ Green cites no authority for this novel proposition, and we are aware of none. The decision to forgo jury instructions on a lesser included offense is a tactical decision lying properly within the province of trial counsel. (See *People v. Canet* (1991), 218 Ill. App. 3d 855, 863; *People v. Maxwell* (1980), 89 Ill. App. 3d 1101, 1104.) Green does

not contend that his trial counsel was ineffective. Unlike the decision to waive the right to a jury trial (Ill. Rev. Stat. 1987, ch. 38, par. 103—6), or the decision to voluntarily enter a guilty plea (Ill. Rev. Stat. 1987, ch. 38, par. 113—4(c); 134 Ill. 2d Rules 402, 605), there is no supreme court rule or statute which requires the court to inquire or set of record a defendant's decision to forego an instruction on a lesser included offense. (*Cf. People v. Raso* (1992), 234 Ill. App. 3d 1099, 1102 (trial court not required to inquire or set of record a defendant's decision to voluntarily waive his right to testify).) Therefore, we conclude that no error was committed.

## IV

Finally, Green argues that the trial court abused its discretion by sentencing him to 10 years' imprisonment.

■ The determination of an appropriate sentence to impose in a given case rests within the sound discretion of the trial judge, and his decision will not be overturned absent an abuse of discretion. (*People v. Wilson* (1991), 143 Ill. 2d 236, 250.) In the case at bar, Green was given a 10-year sentence for the offense of possession of cocaine with the intent to deliver. Possession of 1.16 grams of cocaine with the intent to deliver is a Class 1 felony (Ill. Rev. Stat. 1989, ch. 56$^1$/2, par. 1401(b)(2)) and the statutory sentencing range is equivalent to not less than 4 years and not more than 15 years (Ill. Rev. Stat. 1989, ch. 38, par. 1005—8—1(a)(4)). Green's 10-year sentence falls well within the statutory guidelines. Consequently, we find that the trial judge did not abuse her discretion in sentencing Green.

For all of the foregoing reasons, the judgment of the trial court is affirmed.

Affirmed.

GORDON, P.J., concurs.

JUSTICE McNULTY, specially concurring:

The majority found defendant's conviction for intent to deliver adequately supported by the chemist's testimony regarding the weight and contents of eight of the 18 clear packets of white substance and four of the 26 tinfoil packets of tan powder. The chemist found the eight clear packets to weigh 1.16 grams and to contain a substance containing cocaine. The four tan packets were found to weigh 0.4 grams and contain a substance containing heroin. The chemist expressed no opinion as to the contents or weight of the 32 untested packets. Despite this fact, the prosecutor repeatedly

informed the jury that all 44 packets contained controlled substances and this amount indicates that defendant intended to deliver the drugs. In opening argument the prosecutor stated:

"[Y]ou will hear evidence that he had not one packet, not two, not three, not five, not ten, he had over a dozen packets of cocaine. He had over two dozen packets of heroin."

Likewise, in closing argument, the prosecutor informed the jury that the defendant "had 44 packets of narcotics in his pocket *** that's forty-four packets he was intending to sell." Later the prosecutor stated:

"The remaining forty-four packets. We showed possession. It was in his right pants pocket, controlled substance."

The prosecutor also commented in closing argument that "when you've got forty individual packets of a substance, that is not for one person. Please use your common sense."

This court has repeatedly held that where separate bags or containers of a suspected drug are seized, a sample from each bag or container must be conclusively tested to prove that it contains a controlled substance. (*People v. Valdez* (1992), 230 Ill. App. 3d 975 (where chemist only tested and gave an opinion as to the contents of two of 53 bags, only those two bags could be considered to contain cocaine); *People v. Hill* (1988), 169 Ill. App. 3d 901 (where chemist only conclusively tested three of 63 bags of white powder, defendant was guilty beyond a reasonable doubt of possessing only the amount of cocaine found in those three bags).) In *People v. Games* (1981), 94 Ill. App. 3d 130, the chemist looked at two bags and weighed them individually; however, she subjected the contents of only one bag to chemical analysis that revealed cannabis. The court concluded that in the absence of expert testimony, no inference could be drawn concerning the composition of the untested bag. Furthermore, the court noted that they could speculate that the second bag also contained cannabis; however, a verdict must be based on evidence, not guess, speculation or conjecture.

Therefore, it was only proper for the prosecutor to inform the jury that 12, rather than 44, of the seized packets contained controlled substances. Considering the weight and contents of these 12 tested packets, if the jury had been instructed on the lesser included offense of possession of a controlled substance, it might well have concluded they did not contain an amount in excess of what could be used for personal consumption, particularly in light of the absence of other factors supporting an inference of intent to deliver. The weight to be given the testimony regarding alleged drug paraphernalia seized by the police is diminished by the fact that this evidence was

destroyed by the police before trial. Furthermore, the majority finds significant the officer's testimony that, based on his experience, the manner in which the substances were packaged was commonly used in drug trafficking. However, there is absolutely no evidence that defendant placed the substances in these packets, and the packets could just as likely have been the form in which the substance was purchased by defendant, rather than the form in which it was to be sold. *People v. Crenshaw* (1990), 202 Ill. App. 3d 432.

The record reveals, however, that defendant's attorney did not object to the remarks of the prosecutor set forth above. In addition, his attorney explicitly refused the trial court's offer of an instruction on the lesser included offense of possession of a controlled substance. For these reasons only, I concur with the result reached by the majority.