THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. FRANK ROBINSON *et al.*, Defendants-Appellants.

First District (6th Division)   Nos. 1—93—2993, 1—93—3135 cons.

Opinion filed June 30, 1995.

Michael J. Pelletier and Patricia Unsinn, both of State Appellate Defender's Office, of Chicago, for appellants.

Jack O'Malley, State's Attorney, of Chicago (Renee Goldfarb, James E. Fitzgerald, and Diane Meyer, Assistant State's Attorneys, of counsel), for the People.

JUSTICE RAKOWSKI delivered the opinion of the court:

Defendants Frank Robinson, age 16, and Andre Hawthorne, age 19, were found guilty in a joint bench trial of murder and concealment of a homicidal death. Hawthorne was also found guilty of armed violence. The trial court sentenced both defendants to consecutive terms of imprisonment. In this consolidated appeal, defendants raise the following issues: (1) whether the trial court erred in denying Robinson's motion to suppress his confession on the basis it was made involuntarily; (2) whether the court erred in sentencing both Robinson and Hawthorne to consecutive sentences; and (3) whether Robinson is entitled to 1,282 days' credit against his term of imprisonment for time spent in custody on an unrelated offense. We affirm in part and reverse in part and remand with directions.

On July 15, 1986, police officers discovered Glen Johnson's dead body stuffed in a duffel bag in a dumpster in Skokie, Illinois. He had been beaten and shot with a .32-caliber gun. Upon learning Johnson lived with Carolyn Hawthorne, defendants' mother, investigating

detectives Jones and Silverberg questioned Carolyn and exposed her to a polygraph examination. During interrogation, she implicated her sons in Johnson's murder. The detectives, along with Carolyn, then went to Carolyn's apartment in order to talk to her son Robinson about the murder of Johnson. The detectives, in the presence of Carolyn, advised Robinson of his *Miranda* rights. Robinson agreed to talk to the detectives after his mother told him to "tell the truth" or "tell what happened."

Robinson told the detectives that on July 13, 1986, Johnson and Carolyn had been fighting again. Robinson claimed he and Hawthorne were concerned about the physical well-being of Carolyn, and, as a result, beat Johnson until he was unconscious, covered him with bags, and threw him in the trunk of a car. With Johnson in the car trunk, defendants drove to Skokie, where they deposited Johnson's body in a dumpster. They closed the lid of the dumpster and drove across the street to a service station. Hawthorne ran back to the dumpster with a .32-caliber gun and shot Johnson. He returned to the car and told Robinson "it was done." There was a four- to six-hour time period in between the beating at the apartment and the dumping of the body. During that time, Johnson's body remained in the car trunk.

The interview with Robinson which revealed the aforementioned facts lasted about 15 minutes. At the end of the statement, Robinson was taken to the police station where he gave a court-reported statement to an assistant State's Attorney (ASA). The ASA interviewed Robinson in the presence of his mother and read him his *Miranda* rights. Robinson stated he understood his rights and signed a waiver to that effect. In the court-reported statement, Robinson gave a more detailed account of the killing of Johnson and concealment of his death.

The detectives then flew to El Paso, Texas, to interview Hawthorne. Hawthorne gave both an oral and written statement which related a similar version of events that occurred on July 13, 1986. Hawthorne was extradited, and both he and Robinson were indicted for murder, concealment of a homicidal death, and armed violence.

The trial court found both defendants guilty of the murder of Johnson and concealment of a homicidal death, and also found Hawthorne guilty of armed violence. The trial court sentenced Robinson to consecutive terms of imprisonment of 22 years for murder and 2 years for concealment. Hawthorne also received consecutive sentences of 27 years for murder and 3 years for concealment. Both defendants appeal, arguing the court erred in imposing consecutive sentences for murder and concealment of a homicidal death. Robin-

son also contends the court erred in denying his motion to suppress his statement and in denying him in-custody credit of 1,282 days.

■ Robinson first argues the court erred in denying the motion to suppress his confession on the basis it was made involuntarily. In order for a confession to be admissible at trial, it must be made freely, voluntarily, and without compulsion or inducement. (*People v. Patterson* (1992), 154 Ill. 2d 414, 445, 610 N.E.2d 16.) Although special care must be taken to ensure the confession of a juvenile defendant is voluntary, statements made by juveniles are subjected to the same "totality of the circumstances" standard as those made by adults. (*People v. M.S.* (1993), 247 Ill. App. 3d 1074, 1088, 618 N.E.2d 623.) This standard considers all relevant circumstances surrounding the statement, including the existence of any promises, threats, or physical coercions; the receipt of *Miranda* warnings; the duration of questioning; the age, intelligence, and education of defendant; and the presence of a parent or youth officer. *People v. Denton* (1993), 256 Ill. App. 3d 403, 406, 628 N.E.2d 900; *People v. Lash* (1993), 252 Ill. App. 3d 239, 243, 624 N.E.2d 1129.

■ We find that the totality of the circumstances shows Robinson's confession was voluntary. When the police detectives arrived at Robinson's apartment, they introduced themselves and told Robinson they wanted to talk to him about the murder of Johnson. They advised Robinson of his *Miranda* rights, which he indicated he understood. Carolyn, who was present during the interview, told Robinson that the detectives already knew what happened to Johnson and told him to "tell the truth" or "tell what happened." Robinson thereafter made an oral statement which lasted less than 15 minutes. During this time, he was not handcuffed or restrained in any way. He was never abused, threatened, or promised anything by the detectives or Carolyn. Robinson was 16 years old at the time of his confession, had completed his first year in high school, and displayed no difficulty communicating with the detectives.

We reject Robinson's contention that his confession was involuntarily made and should have been suppressed because his mother Carolyn, acting in cooperation with police, induced him to "tell the truth" or "tell what happened" to Johnson. The cases Robinson cites in support, *People v. Britz* (1984), 128 Ill. App. 3d 29, 470 N.E.2d 1059, and *People v. Stone* (1978), 61 Ill. App. 3d 654, 378 N.E.2d 263, are factually inapposite. Here, Carolyn was a mother, not an agent of law enforcement. The police did not ask her to get Robinson to confess or instruct her to direct Robinson to answer the questions. They did not make her promises or threaten her own arrest in the absence of Robinson's confession. Further, Carolyn expressed genuine concern

for her son's welfare, saying she did not want anything bad to happen to him, and the record indicates they had a close relationship. In addition, there is no evidence Robinson ever asked for an attorney or a disinterested advisor other than his mother to be present, or objected to the presence of his mother at the interview. Therefore, the trial court's finding that Robinson's statement was voluntarily made is not contrary to the manifest weight of the evidence.

■ Next, both defendants Robinson and Hawthorne contend the trial court abused its discretion in giving them consecutive rather than concurrent sentences for murder and concealment of a homicidal death. They argue their sentences violated sections 5—8—4(a) and (b) of the Unified Code of Corrections (Code) (730 ILCS 5/5—8—4(a), (b) (West 1992)).

Pursuant to section 5—8—4(a) of the Code, defendants contend the court erred in imposing consecutive sentences because the offenses were committed as part of a "single course of conduct." Section 5—8—4(a) prohibits consecutive sentences for "offenses which were committed as part of a single course of conduct during which there was no substantial change in the nature of the criminal objective." (730 ILCS 5/5—8—4(a) (West 1992).) "The term 'conduct' refers to an act or series of acts and the accompanying mental state. [Citation.] Accordingly, *** the imposition of consecutive sentences depends upon both the existence of separate acts and separate motivation behind those acts." *People v. Willis* (1990), 204 Ill. App. 3d 590, 595, 561 N.E.2d 1376; *People v. Brown* (1992), 235 Ill. App. 3d 945, 951, 601 N.E.2d 1380.

Defendants' acts of murder and concealment of a homicidal death were part of a common scheme accompanied by the same motivation, namely, to eliminate Johnson from Carolyn's life. Contrary to the State's contention that defendants manifested a change in criminal objective once they closed the lid on the dumpster to prevent discovery of the body, we find that it is also feasible that defendants' criminal purpose remained unchanged from the outset of the beating at the apartment. See *People v. Davis* (1986), 151 Ill. App. 3d 435, 445, 502 N.E.2d 780 (court erred in imposing consecutive sentences where the evidence demonstrated a possibility that defendant entered victim's home with the intent to commit both theft and sexual assault).

A review of the record shows defendants initially beat Johnson in the apartment until he was unconscious. They concealed his body in bags and carried him into Robinson's bedroom. When defendants heard noises coming from Johnson, Hawthorne hit Johnson in the head with a dumbbell five or six times. Defendants carried Johnson

out through a window and placed him in the trunk of a car. They drove to Skokie and deposited Johnson in a dumpster. Again, they heard noises coming from Johnson. They drove across the street to a service station. Hawthorne ran back to the dumpster, reached in and shot Johnson, and closed the lid on the dumpster. He returned to the car and told Robinson "it was done," and defendants drove away. Although the offenses occurred over a four- to six-hour time period, they were part of a single course of conduct as there was no substantial change in the nature of the criminal objective.

We recognize there are instances in which the commission of murder and concealment of a homicidal death clearly necessitates a change in a defendant's criminal objective. (See *People v. Lopez* (1992), 228 Ill. App. 3d 1061, 593 N.E.2d 647.) However, in the case *sub judice*, defendants' acts of killing Johnson persisted during the concealment of his body. The two acts and motivations were inextricably intertwined and did not warrant consecutive sentences. Because we find the trial court erred in imposing consecutive sentences, defendants' sentences for concealment of a homicidal death are ordered to run concurrently with their sentences for murder.

■ Finally, Robinson argues, pursuant to section 5—8—7(b) of the Code (730 ILCS 5/5—8—7(b) (West 1992)), he is entitled to 1,282 days' in-custody credit for the present offenses, without regard to whether he was simultaneously in custody on an unrelated offense. Section 5—8—7(b) provides an offender "shall be given credit on the determinate sentence or maximum term and the minimum period of imprisonment for time spent in custody as a result of the offense for which the sentence was imposed." 730 ILCS 5/5—8—7(b) (West 1992).

Robinson was arrested on an unrelated charge while he was out on $25,000 bond for the present offenses. As a result, his bond was increased from $25,000 to $500,000, and he surrendered in exoneration of the previously posted bond. Robinson pled guilty to the unrelated charge, and approximately $3^{1}/_{2}$ years later was finished serving his prison term. On July 24, 1991, the court reduced his bond on the present offenses to $20,000, and he was released on bond the next day. Robinson spent a total of 1,282 days in custody from January 21, 1988, until July 25, 1991, and now contends he is entitled to credit for those days against his sentences for murder and concealment of a homicidal death. We agree.

Where a defendant who is released on bond is arrested for a subsequent unrelated offense and is held in custody, he is not considered in custody for the original offense until the bond is effectively revoked or withdrawn. Until then, he is considered in custody as a result of the subsequent charge, rather than simulta-

neously on both charges. (*People v. Arnhold* (1987), 115 Ill. 2d 379, 383-84, 504 N.E.2d 100.) Here, however, on January 21, 1988, when Robinson's bond was increased to $500,000, it was effectively withdrawn. Therefore, he was simultaneously in custody on both charges and is entitled to sentence credit from January 21, 1988, through July 25, 1991, for a total of 1,282 days, even though he received credit for the great majority of that period against his sentence for the unrelated charge.

Other courts have held that a defendant is simultaneously in custody on more than one charge where he fails to post bond or withdraws it while awaiting trial on another offense. Thus, he is deemed in custody on both offenses and is entitled to credit against his sentence for the second offense for the period between the date he was charged with the second offense and the sentencing date. (See *People v. Tedford* (1983), 112 Ill. App. 3d 603, 445 N.E.2d 841; *People v. Higgerson* (1987), 157 Ill. App. 3d 564, 510 N.E.2d 574; *People v. Powell* (1987), 160 Ill. App. 3d 689, 513 N.E.2d 1162; *People v. Cleaves* (1988), 169 Ill. App. 3d 252, 523 N.E.2d 720; *People v. Bradney* (1988), 170 Ill. App. 3d 839, 525 N.E.2d 112; *People v. Newman* (1991), 211 Ill. App. 3d 1087, 569 N.E.2d 1089.) From these cases, it follows that Robinson is entitled to in-custody credit for time served from the date of his surrender in exoneration of bond because from that date he was being held simultaneously on both charges.

We are cognizant that other appellate courts in Illinois have held a defendant should not receive credit against his sentence for time served on an unrelated offense. (See *People v. Krankel* (1985), 131 Ill. App. 3d 887, 476 N.E.2d 777; *People v. Hope* (1986), 142 Ill. App. 3d 171, 491 N.E.2d 785; *People v. Uran* (1990), 196 Ill. App. 3d 293, 553 N.E.2d 758; *People v. Hughes* (1988), 167 Ill. App. 3d 265, 521 N.E.2d 240; *People v. Nicholson* (1991), 213 Ill. App. 3d 765, 572 N.E.2d 1188.) As the cases all turn on slightly different facts, we do not venture to guess how those courts would rule on the facts in the instant case. We note, however, that the holdings of those courts fail to recognize the meaning of "simultaneous custody" as contemplated by the supreme court in *Arnhold*.[1]

Similarly, we are unpersuaded by *People v. Jones* (1993), 241 Ill. App. 3d 262, 608 N.E.2d 1331, in which the Fourth District Appellate Court held "[a] strict reading of the statute [section 5—8—7(b)] requires that credit be given only when defendant's incarceration is due *solely* to the offense for which the sentence was imposed."

---

[1]Although *Arnhold* is a speedy trial case, the concept of simultaneous custody remains unchanged for purposes of determining sentence credit.

(Emphasis added.) (*Jones*, 241 Ill. App. 3d at 264.) As stated above, section 5—8—7(b) of the Code provides that an offender shall be given credit "for time spent in custody as a result of the offense for which the sentence was imposed." It does not provide that sentence credit will be given solely on one offense where a defendant has served time on an unrelated charge.

Accordingly, we adhere to the supreme court opinion of *Arnhold* and those cases cited above which hold that a defendant serving a sentence for a prior offense, who fails to post bond while awaiting trial or sentencing on another charge, is entitled to in-custody credit because he is simultaneously in custody on two charges. Therefore, we remand the cause with directions to amend the sentencing order to reflect 1,282 days of sentence credit. In addition, we vacate the imposition of consecutive sentences as to both defendants and order them to serve their concealment of a homicidal death sentences concurrently with their murder sentences.

Affirmed in part; reversed in part and remanded with directions.

McNAMARA, P.J., and EGAN, J., concur.