NO. 4-97-0691

November 25, 1998

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

THE PEOPLE OF THE STATE OF ILLINOIS, ) Appeal from

     Plaintiff-Appellee, ) Circuit Court of

     v. ) Champaign Coun­ty

JERRY S. MINNIWEATHER, ) No. 97CF313

     Defendant-Appellant. )

)

) Honorable

) John G. Townsend,

) Judge Presid­ing.

JUSTICE COOK delivered the opinion of the court:

Following a jury trial, defendant was convicted of possession of a controlled substance with intent to deliver, a Class X felony.  720 ILCS 570/407(b)(1) (West 1996).  Defendant was sen­tenced to 10 years' imprisonment and was ordered to reim­

burse Champaign County for public defender fees pursuant to sec­

tion 113-3.1 of the Code of Criminal Procedure of 1963 (Code) (725 ILCS 5/113-3.1 (West 1996)).  De­fen­dant ap­peals, chal­leng­ing the suf­fi­cien­cy of the evi­dence to sustain his conviction and impo­si­tion of the recoup­ment order without a hearing to determine his abili­ty to pay.  We af­firm in part, vacate in part, and re­

mand with directions.

According to the testimony of the State's witnesses, police offi­cers Jim Rein and Mark Strzesak were on pa­trol in a semi-marked squad car in Cham­paign, Illinois, on an evening in March 1997.  The offi­cers ob­served a black male, whom they later iden­ti­fied as the de­fen­dant, walk up to a parked car and make an ex­change through the pas­sen­ger side win­dow.  Suspecting they had observed a drug sale, the offi­cers ap­proached the sus­pect and asked to speak with him.  As they ap­proached, the suspect fled.  Rein pur­sued the suspect and radi­oed for assis­tance while Strzesak stayed with the squad car.  Over the radio, Rein de­

scribed the sus­pect as wear­ing a black and yellow starter jacket.   Offi­cers John Mur­phy and Scott Swan were already pa­

trol­ling in the area and re­spond­ed to Rein's call.  They were just a few blocks south of the start of the chase when Mur­phy spot­ted the suspect crouching along the side of the house at 1112 West Eure­ka.  Swan gave chase but lost sight of the sus­pect and met up with Rein.  The offi­cers quickly deter­mined that the sus­

pect was boxed in and be­gan to search the im­medi­ate area.  Within minutes Swan saw the sus­pect beneath a patio table out­side 1112 West Eu­re­ka.  The sus­pect had ar­ranged a lawn mower and miscella­

neous patio furni­ture around the table in an ef­fort to con­ceal himself.  Offi­cers Swan and Mur­phy ordered the sus­pect to come out from be­neath the table and show his hands.  The sus­pect did not obey the officers' re­peat­ed orders and eventual­ly the offi­

cers re­moved the bar­ricade and pulled the sus­pect out from un­der the table.  The suspect was placed un­der ar­rest and taken to a squad car.  

When the offi­cers examined the area they discov­ered a large plas­tic bag that con­tained 26 smaller baggies of rock co­

caine, 9 indi­vidual baggies of rock co­caine, and $222 in cash.  These items were found five to six feet from where the sus­pect had been hiding under the table.  It was also discovered upon arrest that the suspect's jack­et was blue, red and white; a Chi­

ca­go Cubs jacket.  Officer Rein testified that he first saw the suspect under an am­ber-tint­ed street­light.

Defendant initially contends that the State failed to prove he was in possession of the cocaine beyond a reasonable doubt.  The standard for reviewing the sufficiency of the evi­

dence in a criminal case is whether, viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.  
People v. Brown
, 169 Ill. 2d 132, 152, 661 N.E.2d 287, 296 (1996); 
Jackson v. Virginia
, 443 U.S. 307, 313, 61 L. Ed. 2d 560, 569, 99 S. Ct. 2781, 2785 (1979) (rejecting test whether there was any evidence to support the conviction).  The fact finder's ver­dict will not be over­turned un­less its ver­

dict is so unreason­able, improba­ble, and unsatis­fac­tory as to leave a rea­sonable doubt as to the defendant's guilt.  
Brown
, 169 Ill. 2d at 152, 661 N.E.2d at 296.  Sometimes appel­late courts mention only the first state­ment from 
Brown
 and em­phasize the word "any."  The impli­cation is that if one person in a hun­dred could have seen the facts the way the trial court did, we cannot inter­fere, al­though we strong­ly dis­agree with the find­ing.  The implication is that this court should never review a find­ing of fact.  Those implica­tions are not accu­rate.  While a jury's de­

termination of guilt is entitled to great deference, and while we will not retry the defendant when the sufficiency of the evi­dence is challenged, "'it is [still] our duty to set aside a conviction when the evi­dence raises a reason­able doubt of defendant's guilt.'"  
People v. Schott
, 145 Ill. 2d 188, 206, 582 N.E.2d 690, 699 (1991), quoting 
People v. Boclair
, 129 Ill. 2d 458, 474, 544 N.E.2d 715, 722 (1989).  

Even in civil cases a court may reverse a jury verdict if it is against the manifest weight of the evi­dence, that is, when an opposite conclusion is appar­ent, or when the find­ings appear to be unrea­sonable, arbi­trary or not based upon the evi­

dence.  
Rhodes v. Illinois Central Gulf R.R.
, 172 Ill. 2d 213, 242, 665 N.E.2d 1260, 1274 (1996).  
Jackson
 held that the stan­

dard in civil cases is not sufficient protection for defen­dants in criminal cases, because the civil cases did not take the re­

quirement of proof beyond a rea­sonable doubt into ac­count.  
Jack­

son
, 443 U.S. at 318 n.11, 61 L. Ed. 2d at 573 n.11, 99 S. Ct. at 2789 n.11; see also 11 C. Wright, A. Miller & M. Kane, Federal Prac­tice & Pro­ce­dure §2806, at 65-67 (2d ed. 1995) (federal stan­

dard a lesser stan­dard than Illinois manifest weight stan­dard).  The ques­tion for the court to de­cide, under 
Jack­son
, is whether, on the evi­dence, the jury would have to have a rea­son­able doubt.  See 2 C. Wright, Federal Prac­tice & Procedure §467 (2d ed. 1982).  This ques­tion, like the ques­tion whether there is any evidence at all to support a propo­si­tion, is a ques­tion of law for the court.  See F. James & G. Hazard, Civil Pro­cedure §7.11 (3d ed. 1985); 
Jack­son
, 443 U.S. at 321, 61 L. Ed. 2d at 575, 99 S. Ct. at 2790 ("courts can and regu­lar­ly do gauge the sufficien­cy of the evi­

dence without in­truding into any legit­imate domain of the trier of fact").            

We do not do our duty if we refuse to consid­er whether the evi­dence is suffi­cient to sus­tain a ver­dict.  A mere recital of the standard of review is not an ade­quate reso­lution of a challenge to the suffi­ciency of the evi­dence.      

To sustain a con­viction for pos­ses­sion of a con­trolled sub­stance with intent to deliver, the State must prove that (1)  the defendant had knowl­edge of the pres­ence of the con­trolled sub­stance, (2) the controlled substance was in the imme­diate control or possession of the defen­dant, and (3) the defen­dant intended to deliver the con­trolled sub­stance.  
People v. Rob­in­

son
, 167 Ill. 2d 397, 407, 657 N.E.2d 1020, 1026 (1995).  In a pros­e­cu­tion for pos­session of a con­trolled sub­stance the State need not prove actual pos­session when con­struc­tive posses­sion can be in­ferred from the facts.  
People v. Beverly
, 278 Ill. App. 3d 794, 798, 663 N.E.2d 1061, 1064 (1996).  

"Constructive pos­ses­sion may exist even where an individu­al is no longer in physi­cal con­

trol of the drugs, provid­ed that he once had physical control of the drugs with intent to exercise control in his own be­half, and he has not aban­doned them and no other per­son has ob­tained pos­ses­sion."  
People v. Adams
, 161 Ill. 2d 333, 345, 641 N.E.2d 514, 519-20 (1994). 

Defendant argues the State introduced "no evidence" that he at any time had possession of the drugs that were found at the scene of his arrest.  That assertion rests on the erro­

neous premise that con­trol of the pre­mis­es is an absolute re­

quire­ment for con­structive posses­sion, and that with­out it, all other cir­cumstan­tial evidence can be disre­garded.  Control of the pre­mis­es is not required for a finding of constructive posses­

sion.  
Adams
, 161 Ill. 2d at 345, 641 N.E.2d at 519.  While it is well set­tled that "where nar­cot­ics are found on pre­mises under defendant's control, it may be in­ferred that the defen­dant had both knowledge and control of the narcot­ics" (
People v. Nettles
, 23 Ill. 2d 306, 308, 178 N.E.2d 361, 363 (1961)), the in­verse in­

fer­ence does not fol­low.  Where narcot­ics are found on premises that are 
not
 under the defendant's control, defendant's con­trol of the pre­mises is not disposi­tive.  Rather, it is defendant's rela­tion­ship 
to
 
the
 
con­tra­band
 that must be ex­am­ined.  

Defendant supports his argument with three "premises cases" that are factually distinguishable from the case at bar.  
In re K.A.
, 291 Ill. App. 3d 1, 682 N.E.2d 1233 (1997) 
(defen­dant ar­rested fleeing a known "drug house"); 
People v. Adams
, 242 Ill. App. 3d 830, 610 N.E.2d 763 (1993) 
(defendant discovered in a bath­room in an apart­ment leased to another); 
People v. Ray
, 232 Ill. App. 3d 459, 597 N.E.2d 756 (1992) 
(defendants discovered in liv­ing room of apart­ment rented by others).  Al­though not cited by the par­ties, this case is more closely analo­gous to 
Adams
, 161 Ill. 2d 333, 641 N.E.2d 514, and 
Beverly
, 278 Ill. App. 3d 794, 663 N.E.2d 1061.  

In 
Adams
, the court upheld a conviction based on con­

struc­tive possession when the controlled substance was found in an airplane rest room.  
Adams
, 161 Ill. 2d 333, 641 N.E.2d 514.  The de­fen­dants were noticed enter­ing the rest room prior to take­

off and imme­diately fol­lowing each other.  A flight atten­dant who had noted the defendants' behavior discov­ered the drugs in the rest room after takeoff.  Upon land­ing, the po­lice board­ed the plane, confis­cated the drugs, and made the arrest that re­sulted in con­viction for possession.  

On appeal it was argued there was no constructive pos­

session because the defendants had no control over the rest room.  
Adams
, 161 Ill. 2d at 344, 641 N.E.2d at 519.  The court held con­trol of the rest room was not dis­pos­i­tive when circumstantial evidence indicated the defen­dants had intend­ed to exercise con­

trol over the sub­stance.  
Adams
, 161 Ill. 2d at 345, 641 N.E.2d at 520.  It was fur­ther held that hid­ing or dis­pos­ing of the con­

tra­band to avoid detec­tion does not con­sti­tute aban­don­ment.  
Adams
, 161 Ill. 2d at 345, 641 N.E.2d at 520.  Notably, nobody wit­nessed the defen­dants in actual posses­sion of the drugs or dis­posing of the drugs; nor were the drugs found within reach of the defen­dants upon arrest.  The rest room was not only out of the defendants' control, but was used by other passengers throughout the flight.  Nevertheless, the conviction was upheld.   
See also 
Peo­ple v. Pittman
, 216 Ill. App. 3d 598, 603, 575 N.E.2d 967, 970 (1991) 
(mere ac­cess by other persons to the area where drugs are found is insuf­fi­cient to de­feat a charge of con­struc­

tive posses­sion).  

Similarly, in 
Beverly
, circumstantial evi­dence resulted in conviction of a defendant who dropped his con­traband on the side of the road while the arresting officer's attention was diverted.  
Beverly
, 278 Ill. App. 3d 794, 663 N.E.2d 1061.  The officer had pulled defendant over for moving violations and never saw the defendant in possession of a plastic bag of rock co­caine.  However, the defendant's "highly unusual and suspicious" behavior during the stop led the officer to examine the area where defen­

dant had been pacing.  There he dis­covered the bag of cocaine.  This court held that the circumstan­tial evidence was suffi­cient to sup­port a finding of constructive pos­ses­sion.  
Beverly
, 278 Ill. App. 3d at 799, 663 N.E.2d at 1065.  As in this case, the drugs were found in an area that was not in defendant's control.  Also, as in this case, the drugs were found where the defen­dant had been, but were not with­in defendant's reach at the moment they were discovered.  Never­the­less, the circumstantial evi­dence sup­porting an inference of possession was sufficient to sus­tain a finding of possession.  

As in the cases above, although the defendant in this case was not seen in pos­ses­sion of the cocaine, the cir­cumstan­

tial evi­dence sup­porting a finding of posses­sion is strong.  The evidence im­pli­cating defen­dant includes the following:  the de­

fendant fled from po­lice; the defendant was only out of sight for a brief period of time; no one else was seen in the area; the defendant hid from po­lice; the defendant failed to obey police orders to show his hands and come forward; the drugs were discov­

ered within five to six feet of the defendant's hiding place; and there was no evidence the patio at 1112 West Eureka was a "drug house."  We find that from this evi­dence a reasonable trier of fact could draw the inference that the defendant had intended to exercise control over the cocaine and, thus, it was in his pos­

ses­sion.  

This court has previously noted that the "evidence establishing constructive possession is often whol­ly cir­cum­stan­tial."  
Peo­ple v. Newman
, 211 Ill. App. 3d 1087, 1093, 569 N.E.2d 1089, 1093 (1991).  The jury must weigh those facts that tend to sup­port the infer­ence that defen­dant controlled the sub­stance against those facts that demonstrate lack of con­trol.  
Newman
, 211 Ill. App. 3d at 1093, 569 N.E.2d at 1093.  

Defendant contends the jury actually held a reasonable doubt, despite its delivery of a guilty verdict, as evidenced by its request to re­view evi­dence and questions posed to the court dur­ing de­lib­er­a­tions.  The defendant's argument is without merit.  That the jury asked for guid­ance dur­ing de­lib­er­a­tions mere­ly indi­cates that the jury took its job seriously and consci­entious­

ly worked to come to a just deci­sion.  

Defendant next contends the court erred in failing to hold a hearing to assess his ability to pay the reimbursement prior to the services being rendered under section 113-3.1 of the Code.  In 
People v. Love
, 177 Ill. 2d 550, 563, 687 N.E.2d 32, 38 (1997), the Supreme Court of Illinois held that trial courts are required to conduct hearings into defen­dants' financial resources as a precondition to ordering reim­bursement.  In this case, no hearing was held.  The State con­cedes under the precedent of 
Love
 that the reim­bursement order must be vacated and the cause re­

manded for compliance with the require­ments of 
Love
.

Accordingly, that portion of the judgment ordering reimbursement for attorney fees is vacated, and the cause is remanded.  Defendant's conviction is otherwise affirmed.  

Affirmed in part and vacated in part; cause remanded with directions.

GREEN, J., concurs.

GARMAN, P.J., specially concurs. 

PRESIDING JUSTICE GARMAN, specially concurs: 

While I concur in the result of this case, I write to express my concern about the majority discussion of the standard of review.  I am fearful that practitioners will read this opinion and conclude that we are altering the standard of review on the sufficiency of the evidence.  We are not.

The requisite test when the sufficiency of the evidence is challenged is whether, viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reason­

able doubt.  The verdict must not be so unreasonable, improbable, or unsatisfactory that it leaves a reasonable doubt as to the defendant's guilt.  This means that the function of a reviewing court is to carefully examine the process by which the fact finder reasoned from the evidence to the ultimate finding.  If there is sufficent factual support in the record upon which the fact finder could have based an inference of guilt, the process is rational and it is not within our province to set aside the verdict because we might have reached a different result.  Upon carefully examining the evidence in the present case, we have concluded that the fact finder could reasonably have found the defendant guilty.